IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ROXANNE LABELLA,                          :
                Plaintiff,

                                                    CIVIL ACTION
        v.                                :         NO. 11-6142

THE PNC BANK CORP. AND
AFFILIATES LONG TERM                      :
DISABILITY PLAN
                Defendant.

**<u>MEMORANDUM</u>**

**Jones, II, J.**                              **February 26, 2014**

### I.        Introduction

Plaintiff Roxanne Labella brings the above-captioned action against Defendant PNC

Bank Corp. and Affiliates Long Term Disability Plan, alleging that Defendant violated ERISA

by denying her application for Long-Term Disability ("LTD") benefits. Now pending before this

Court are cross motions for summary judgment.  Plaintiff contends Defendant's denial of LTD

benefits was arbitrary and capricious, while Defendant maintains Plaintiff failed to timely submit

her claim and that LTD benefits were properly denied.  For the reasons set forth below,

Defendant's Motion shall be granted and Plaintiff's motion shall be denied.

### II.       Factual Background

Plaintiff was employed by PNC Bank as a Loan Support Analyst II from August 10, 2009

until August 13, 2010.  (Def.'s Stmt. Undisp. Facts ¶ 1; Pl.'s Stmt. Undisp. Facts ¶ 1). As an

employee of PNC, Plaintiff participated in The PNC Bank Corp. and Affiliates Long Term

Disability Plan ("Plan"). The Plan is an employee welfare benefit plan governed by the

Employee Retirement Income Security Act ("ERISA") and provides long-term disability benefits to qualifying employees. (Def.'s Stmt. Undisp. Facts ¶ 2; Pl.'s Stmt. Undisp. Facts ¶ 2). Within the Plan, PNC is listed as the Plan Administrator and as such, has the power to do the following:

1) To establish and enforce such rules, regulations and procedures as it shall deem necessary and proper for the efficient operation and administration of the Plan;

2) To interpret the Plan, and the rules and regulations, including the supplying of any omissions in accordance with the intent of the Plan and its interpretations thereof in good faith;

3) To determine the eligibility and status of any Employee with respect to Plan participation;

4) To determine questions of fact, law, and mixed questions of fact and law;

5) To compare and calculate for payment the amount of benefits payable to any person in accordance with the terms of the Plan; and

6) To appoint or employ individuals or firms to assist in the administration of the Plan and any other agent or agents it deems advisable.

(Def.'s Stmt. Undisp. Facts ¶ 4). The Plan also provides that "[t]he Administrator shall have complete and sole discretion with respect to each of the powers listed in subparagraphs (1)-(6) above and no decision of the Administrator shall be overturned unless the decision is arbitrary and capricious." (Def.'s Stmt. Undisp. Facts ¶ 5).

Under the Plan, the terms "Total Disability" and "Totally Disabled" require that, for the first twenty-four (24) months of Total Disability (including an initial ninety-day (90) Elimination Period), the Participant "cannot perform each of the material duties of his or her regular occupation" because of injury or sickness, and "requires the regular attendance of a physician." (Def.'s Stmt. Undisp. Facts ¶ 10). The Elimination Period is defined as "[a] period of consecutive days of Total Disability for which no benefit is payable." (Def.'s Stmt. Undisp. Facts ¶ 11). "The Elimination Period is shown in the Plan Specifications and begins on the first day of Total Disability." (*Id.*) "If during the Elimination Period Total Disability stops for any

2

seven (7) (or fewer) calendar days, then the Total Disability will be treated as continuous. However, days that the Participant is not Totally Disabled will not count toward the Elimination Period." (*Id.*)

LTD benefits paid under the Plan cease: on the earliest date Total Disability ceases; the date that the Participant fails to provide proof of Total Disability; or, the date that the Participant ceases employment. (Def.'s Stmt. Undisp. Facts ¶ 13). It is the Participant's responsibility to submit information sufficient to establish Total Disability and, thus, her entitlement to benefits under the Plan. (Def.'s Stmt. Undisp. Facts ¶ 14).

Plaintiff filed an application for benefits with the Plan citing symptoms of "very bad pain, inflammation, memory problems and fatigue." (Pl.'s Stmt. Undisp. Facts ¶ 3). However, the parties dispute the date on which Plaintiff filed her application under the Plan. Plaintiff states that she filed the application for benefits on August 13, 2010, while Defendant maintains that Plaintiff did not file her application for LTD benefits under the Plan until November 22, 2010. (Pl.'s Stmt. Undisp. Facts ¶ 3; Def.'s Resp. to Pl.'s Facts ¶ 3).

On September 17, 2010, Plaintiff visited a cardiologist named Dean Karalis, M.D., who noted that Plaintiff had experienced "periods of sinus tachycardia and occasional PVCs." (Pl.'s Stmt. of Undisp. Facts ¶ 4). As a result of her reports of joint and shoulder pain, Plaintiff underwent a shoulder x-ray on September 23, 2010, which ultimately showed no abnormality. (Def.'s Stmt. Undisp. Facts ¶ 23). On October 29, 2010, Dr. Martin E. Koutcher, M.D. conducted a physical examination of Plaintiff, after which Dr. Koutcher diagnosed Plaintiff with fibromyalgia. (Pl.'s Stmt. Undisp. Facts ¶ 5). Dr. Koutcher expressed additional concern that Plaintiff may still have an underlying connective tissue disease due to the weakly positive Rheumatoid Factor of 20, anxiety, and mouth ulcers. (Pl.'s Stmt. Undisp. Facts ¶ 6). Plaintiff's

primary care physician, Anthony Mela, M.D., submitted a Treating Physician's Statement, which also indicated a primary diagnosis of fibromyalgia. (Pl.'s Stmt. Undisp. Facts ¶ 7). While the exact date is disputed by the parties, Dr. Mela submitted the Treating Physician's Statement sometime between November 13, 2010 and November 30, 2010. (Pl.'s Stmt. Undisp. Facts ¶ 7; Def.'s Resp. to Pl.'s Facts ¶ 7).

As part of its assessment, the Claims Administrator, Sedgwick Claims Management Services, Inc. ("Sedgwick") performed an investigative review of Plaintiff's initial claim. (Def.'s Stmt. Undisp. Facts ¶ 17). Sedgwick requested information from Dr. Koutcher, who reported on December 9, 2010 that Plaintiff was "unable to work" due to chronic joint and muscle pain. (Def.'s Stmt. Undisp. Facts ¶ 19; Pl.'s Stmt. Undisp. Facts ¶ 8). On December 10, 2010, Sedgwick requested copies of Plaintiff's medical records from Dr. Koutcher. (Def.'s Stmt. Undisp. Facts ¶ 26). On that same date, Dr. Mela reported to Sedgwick that Plaintiff was "unable to work" due to joint and muscle pain, as well as fatigue. (Def.'s Stmt. Undisp. Facts ¶ 20).

On or about December 15, 2010, Sedgwick sent Plaintiff's claim file to Network Medical Review for review by an independent physician.  (Def.'s Stmt. Undisp. Facts ¶ 27). That independent physician, D. Dennis Payne, Jr., M.D., was board-certified in rheumatology and internal medicine. (Def.'s Stmt. Undisp. Facts ¶ 31). On December 21, 2010, in response to Sedgwick's request for copies of Plaintiff's medical records, Dr. Koutcher provided copies of office notes and "a few additional medical records." (Def.'s Stmt. Undisp. Facts ¶ 29). Dr. Koutcher also provided the results of an October 15, 2010 x-ray of Plaintiff's right foot that was taken in response to her complaints of pain. (Def.'s Stmt. Undisp. Facts ¶ 30). The x-ray showed "no fracture, soft-tissue swelling or any other abnormality." (Def.'s Stmt. Undisp. Facts ¶ 30).

Also on December 21, 2010, Dr. Payne issued a report regarding his review of Plaintiff's LTD claim. (Def.'s Stmt. Undisp. Facts ¶ 31).

After reviewing Dr. Payne's report, Defendant denied Plaintiff's LTD benefits claim by letter dated December 28, 2010. (Pl.'s Stmt. Undisp. Facts ¶ 12). On January 4, 2011, Plaintiff appealed the denial of her LTD benefits application. In order to conduct an independent review of the claim, Insurance Appeals, Ltd. received Plaintiff's entire LTD claim file on January 18, 2011, along with her appeal submissions. (Def.'s Stmt. Undisp. Facts ¶ 43). Assigned to Plaintiff's appeal was Dr. Gail Kerr, an independent, board-certified physician specializing in rheumatology and internal medicine. (Def.'s Stmt. Undisp. Facts ¶ 43).  After reviewing the matter, Dr. Kerr issued a report on January 26, 2011, concluding that there was "no evidence to support that Plaintiff was Totally Disabled from performing her regular, unrestricted occupation as of August 16, 2010. (Def.'s Stmt. Undisp. Facts ¶¶ 44-46).

By letter dated February 18, 2011, Sedgwick informed Plaintiff that it was upholding its prior denial of her claim for LTD benefits.  (Def.'s Stmt. Undisp. Facts ¶ 50; Pl.'s Stmt. Undisp. Facts ¶ 13).  Sedgwick noted Plaintiff's subjective complaints, but concluded that there was "no evidence of [her] inability to perform tasks throughout the day."   (Def.'s Stmt. Undisp. Facts ¶ 51).  As a result of this decision, Plaintiff filed the instant lawsuit on September 29, 2011. (Def.'s Stmt. Undisp. Facts ¶ 52).

### III.    Standard of Review

A challenge to a denial of LTD benefits under § 1132(a)(1)(B) is generally reviewed de novo. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). However, where an ERISA "benefit plan gives the administrator discretion to determine eligibility for benefits or to construe the terms of the plan, courts apply an arbitrary and capricious standard of review."

*Steele v. Boeing Co.*, 225 F. App'x 71, 74 (3d Cir. 2007) (citing *Abnathya v. Hoffmann-La Roche, Inc.*, 2 F.3d 40, 44-45 (3d Cir. 1993)). Under this standard of review, the court "may overturn a decision of the plan administrator only if it is without reason, unsupported by substantial evidence or erroneous as a matter of law." *Id.* (internal quotations and citation omitted). "This scope of review is narrow, and the court is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits." *Id.* (internal quotations and citation omitted).

"On a motion for summary judgment in an ERISA case where the plaintiff claims that benefits were improperly denied, a reviewing court is generally limited to the facts known to the plan administrator at the time the decision was made." *Eppley v. Provident Life and Acc. Ins. Co.*, 789 F. Supp. 2d 546, 565 (E.D. Pa. 2011) (quoting *Post v. Hartford Ins. Co.*, 501 F.3d 154, 168 (3d Cir. 2007)). "Consequently, when, as here, a plaintiff alleges that a plan administrator… abused its discretion in deciding to terminate benefits, [the Court] generally limit[s] [its] review to the administrative record, that is, to the 'evidence that was before the administrator when [it] made the decision being reviewed.'" *Id.* at 565-66 (quoting *Sivalingam v. Unum Provident Corp.*, 735 F.Supp. 2d 189, 194 (E.D. Pa. 2010) (internal citation omitted)).

In conducting this review and ruling upon the pending motions, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a summary judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c). In order to defeat a motion for summary judgment, disputes must be both (1) material, meaning concerning facts that will affect the outcome of the issue under substantive law, and (2) genuine, meaning the evidence must be such

that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. An issue is genuine if the fact finder could reasonably return a verdict in favor of the non-moving party with respect to that issue. *Anderson*, 477 U.S. at 248. In reviewing a motion for summary judgment, the court "does not make credibility determinations and must view facts and inferences in the light most favorable to the party opposing the motion." *Seigel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995).

## IV.   DISCUSSION

### a.  ERISA

In the only Count presented in Plaintiff's Complaint, she seeks: 1) a declaration pursuant to 29 U.S.C. §1132(a)(1)(B) that Plaintiff is entitled to applicable long term disability benefits pursuant to the Plan; 2) damages; 3) interest and cost of suit; and 4) reasonable counsel fees pursuant to 29 U.S.C. §1132(g)(1).[1]

### i.      Timeliness of Plaintiff's LTD Benefits Claim

"Under prevailing Third Circuit precedent, a plaintiff cannot seek relief in the federal courts for an ERISA claim unless he or she has first exhausted available administrative remedies under the particular ERISA plan." *Harding v. Provident Life and Acc. Ins. Co.*, 809 F. Supp. 2d 403, 420 (W.D. Pa. 2011) (citing *D'Amico v. CBS Corp.*, 297 F.3d 287, 291 (3d Cir. 2002)); *see also Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 249 (3d Cir. 2002); *Weldon v. Kraft,*

---

[1] Plaintiff's Amended Complaint seeks relief under 29 U.S.C. Section 1132(g)(1)(d). Subsection "(d)" does not exist in this portion of the statute; counsel fees are addressed in 29 U.S.C. §1132(g)(1).

*Inc.*, 896 F.2d 793, 800 (3d Cir.1990). "Courts require exhaustion of administrative remedies 'to help reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the costs of claims settlement for all concerned.'" *Id.* (quoting *Harrow*, 279 F.3d at 249).

As a preliminary matter – albeit, nondispositive for reasons which follow – Defendant correctly points out that Plaintiff did not exhaust her administrative remedies because she failed to timely submit her application for LTD benefits as required by the Plan.  The Plan required Plaintiff to submit her LTD claim no later than ninety (90) days following the date Total Disability began. As Plaintiff's last day of work was August 13, 2010, the ninety-day period within which Plaintiff could submit her claim ended on November 13, 2010. Defendant asserts Plaintiff did not submit her LTD claim until November 22, 2010. Plaintiff maintains that her application for LTD benefits was filed with the Plan on August 13, 2010 and, in support thereof, points to her Employee Application for Benefits ("Application") in the Administrative Record ("AR") (Pl.'s Mot. Summ. J. ¶ 3). However, the record demonstrates that Plaintiff did not sign the Application until November 22, 2010, after the ninety-day period provided by the Plan had run. (AR 22-25). Plaintiff cites to no other evidence of record to support her assertion that she applied for LTD benefits on August 13, 2010. As a result, this Court will consider Defendant's asserted date of application of November 22, 2010 as undisputed for summary judgment purposes. *See* Fed. R. Civ. Pro. 56(e)(2) (allowing the court to consider as undisputed for purposes of a motion a fact which a party fails to properly support).

Despite the timing issue, Defendant provided Plaintiff with the benefit of a full review of her application, as well as notification of her right under ERISA to appeal an initial denial. During the entire administrative review, including Plaintiff's eventual appeal, Defendant

considered Plaintiff's application for LTD benefits on *substantive* grounds. As such, "[h]aving declined to invoke the ninety-day limitations period as a basis for denying [Plaintiff's] LTD claim during the course of the administrative proceedings, [Defendants] cannot turn around and rely on it as a basis for defeating [Plaintiff's] claims under the ERISA." *Haisley v. Sedgwick Claims Mgt. Services, Inc.*, 776 F. Supp. 2d 33, 48 (W.D. Pa. 2011).

### ii.    <u>Arbitrary and Capricious</u>

The Third Circuit has held that it is arbitrary and capricious to require objective medical evidence of a chronic fatigue syndrome diagnosis - which is defined by the absence of objective medical evidence - as it creates an impossible hurdle for claimants *See Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 442–443 (3d Cir.1997) (finding that it is arbitrary and capricious to require objective medical evidence), *abrogated on other grounds by Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 847 (3d Cir. 2011). *See also Steele v. Boeing Co.*, 225 F. App'x 71, 74–75 (3d Cir.2007) (finding that requiring objective medical evidence for a diagnosis of fibromyalgia, a condition based on subjective complaints of pain and one which cannot be proved objectively, results in the arbitrary and capricious elimination of all disability claims based on fibromyalgia).

However, courts within this District have also acknowledged a distinction between requiring objective medical evidence that an LTD benefit claimant *has a condition*, and requiring objective medical evidence that the *condition is disabling*. *See Gibson v. Hartford Life & Accident Ins. Co.*, No. 2:06-CV-3814, 2007 U.S. Dist LEXIS 47337, at *39-40 (E.D. Pa. June 27, 2007) (where the plan administrator relied in part on a doctor's physical evaluation form to assess the physical activities and fine motor skills of a plaintiff with fibromyalgia, a finding that the plaintiff was not disabled within the meaning of the Plan was not arbitrary and capricious); *see also Lamanna v. Special Agents Mut. Benefits Ass'n*, 546 F.Supp. 2d 261, 296 (W.D. Pa.

2008) ("While the amount of fatigue or pain an individual experiences may be entirely subjective, the extent to which those conditions limit her functional capabilities can be objectively measured.").

Both Plaintiff and Defendant agree that the arbitrary and capricious standard applies to the case at hand. The Plan gave the administrator broad authority to determine eligibility for benefits and to construe the terms of the plan. (AR 152-153). Thus, this Court's scope of review is narrow, and Defendant's denial of LTD benefits may be overturned only if it was "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Steele*, 225 F. App'x at 74 (internal quotations and citation omitted).

Plaintiff argues that the medical record is subject to the Treating Physician Doctrine. (Pl.'s Mot. Summ. J. pp. 11-12). This doctrine states that the reports and opinions of treating physicians receive great weight and substantial deference, particularly where the opinion has been formed over a prolonged period of examination and observation. *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).  Thus, Plaintiff argues that the reports and opinions submitted by her doctors cannot be discredited without contrary evidence. (Pl.'s Mot. Summ. J. p. 12).

The Treating Physician's Doctrine was developed "as a means to control disability determinations by administrative law judges under the Social Security Act." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 829 (2003). However, "critical differences between the Social Security disability program and ERISA benefit plans caution against importing a treating physician rule from the former area into the latter." *Id.* at 832-33. For example, unlike Social Security, "[n]othing in ERISA requires employers to establish employee benefits plans. Nor does ERISA mandate what kind of benefits employers must provide if they choose to have such a plan." *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996).  While establishing eligibility for

Social Security benefits involves measuring an individual's circumstances against a statutorily prescribed set of criteria, the determination of a claim under an ERISA plan is essentially contingent upon the interpretation of the terms and conditions within that plan. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  "[C]ourts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician, and . . . may not 'impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Kaufmann v. Metro. Life Ins. Co*., 658 F. Supp. 2d 643, 649 (E.D. Pa. 2009) (internal citation and quotation omitted).  An administrator's reliance on the opinions of its non-treating medical consultants over the opinions of a claimant's treating physicians, therefore, does not render its denial of disability benefits arbitrary and capricious.  *Dolfi v. Disability Reinsurance Mgmt. Servs.*, 584 F. Supp. 2d 709, 734-735 (M.D. Pa. 2008).

Defendant herein argues that even assuming Plaintiff has fibromyalgia and in fact suffers from the types and degree of pain she reported to her treating physicians, Plaintiff still has not established that she cannot perform all the material duties of her job, as required by the Plan for Total Disability. In support of same, Defendant points to a Physical Capacities Evaluation for Sedentary Jobs ("PCE"). The purpose of the PCE was to assess Plaintiff's ability to perform different activities, such as sitting, standing, and walking, in addition to assessing her fine motor skills. The evaluating physician was to rate the frequency and/or duration with which Plaintiff could perform each physical function. However, in completing the PCE, Plaintiff's primary care physician, Dr. Mela, crossed out the form and wrote across it "unable to work in any capacity at this time." (AR 32). In separate correspondence to Plaintiff's other treating physician, Dr. Koutcher, Defendant asked if Plaintiff had any current restrictions or limitations. In response,

rather than describe types and qualities of physical restrictions, Dr. Koutcher wrote "unable to work" and noted joint and muscle pain, as well as a "fair" prognosis for Plaintiff's return to employment. (AR 46).[2]   Dr. Mela responded essentially the same way to similar correspondence directed to him.  (AR 51). However, in conducting her review of the matter, Dr. Kerr telephoned Dr. Mela, who "confirm[ed] [Plaintiff's] ability to perform full activities of daily living, but report[ed] that [Plaintiff's] continuing symptoms have led to some depression."  (AR 6, 118)[3]

In assessing Plaintiff's claim for LTD benefits, Defendant's reviewing physicians also examined all the diagnostic reports and notes[4] submitted by Plaintiff's treating physicians and considered the statements made by Dr. Mela over the telephone regarding her claim.  (AR 6, 83-84,112-116). Defendant's reviewing physicians both found that the "examination findings [did]

---

[2]  Despite Plaintiff's written authorization to do so, Dr. Koutcher refused to speak with reviewing physician Gail Kerr on the telephone.  (AR 5)  As such, Plaintiff asked Dr. Kerr to call Dr. Mela. (AR 8).

[3]  Twelve (12) days after Plaintiff's final appeal was denied and her administrative remedies had been exhausted, Dr. Mela sent a fax to Defendant's Claims Appeals Unit, informing them that Plaintiff's "condition has changed" and that she has been diagnosed with Lupus. Dr. Mela also indicated his wish to "correct" statements made regarding Plaintiff's ability "to perform her full activities of daily living."  (AR 129)  The final denial of Plaintiff's claim that was issued on February 18, 2011 clearly informed Plaintiff that "[a]t this point all appellate administrative remedies have been exhausted.  No further information will be reviewed or considered for this claim, as the administrative record is now closed."  (AR 127)  Inasmuch as this Court's consideration of evidence is limited to "'evidence that [which] was before the administrator *when [it] made the decision being reviewed*[,]'" the fax sent by Dr. Mela on March 3, 2011 (AR 127) may not be considered.  *Eppley v. Provident Life and Acc. Ins. Co.*, 789 F. Supp. 2d 546, 565-66 (E.D. Pa. 2011) (quoting *Post v. Hartford Ins. Co.*, 501 F.3d 154, 168 (3d Cir. 2007)) (emphasis added).  *See also Marciniak v. Prudential Fin. Ins. Co. of Am.*, Civ. No. 05-4456, 2006 U.S. App. LEXIS 15607, at *7 (3d Cir. Pa. 2006) (reiterating that the Third Circuit "has made it clear that the record for arbitrary and capricious review of ERISA benefits denial is the evidence that was before the plan administrator at the time of the benefit denial, which cannot be supplemented during litigation." (citing *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 440 (3d Cir. 1997) (holding that when reviewing an ERISA plan administrator's decision to deny benefits, the court must look to the evidence that was before the administrator when he or she made the decision being reviewed)).

[4] Some of the handwritten notes submitted by Dr. Koutcher were not legible and as previously mentioned, Dr. Koutcher refused to speak with anyone reviewing Plaintiff's claim.

not support specific restrictions or limitations on activities," (AR 84) and that there was "no report or documentation of any measurable parameter that would indicate why this patient was unable to work." (AR 115).  Based on a review of all of Plaintiff's medical records, additional information received from Plaintiff's treating physicians, and the PCE form described above, Defendant determined there was a lack of objective medical evidence that Plaintiff was unable to perform the material duties of her job, and thus denied her claim.

"A 'paper review' of a claim file is not, by itself, arbitrary and capricious." *Wernicki-Stevens*, 641 F. Supp. 2d 418, 425 (E.D. Pa. 2009). Additionally, the fact that Defendant credited the opinions of the reviewing physicians over those of Plaintiff's is not per se arbitrary and capricious. *Id*. (citing *Black & Decker*, 538 U.S. at 834 (2003)). Absent evidence to the contrary, a professional disagreement between Plaintiff's and Defendant's physicians does not amount to an arbitrary and capricious refusal. *Wernicki-Stevens*, 641 F. Supp. 2d at 425.  Plaintiff points to nothing other than the professional disagreement between her physicians and Defendant's reviewing physicians as evidence of an arbitrary refusal. Consequently, this disagreement alone does not rise to a level of arbitrary and capricious.

The Plan required that Plaintiff provide proof of her disability. (AR 147). Defendant provided the PCE as a means for Plaintiff to provide proof of her disability. While asking for a diagnosis, the function of the PCE was not to determine whether Plaintiff's diagnosis was in fact valid, but to determine Plaintiff's physical abilities. The determination of Plaintiff's physical abilities were to be used as reference for determining her ability to perform the material functions of her job. Rather than provide the information requested on the PCE, Plaintiff's physicians provided their opinion on her general ability to work.  Said information was non-responsive and incapable of assisting Defendant's physicians in their determination as to whether

13

or not Plaintiff was "totally disabled," as required for LTD benefits under the Plan. Although the opinions of Plaintiff's physicians were to be considered in determining whether Plaintiff was totally disabled, Defendant's physicians found a lack of objective medical evidence that Plaintiff was prevented from performing the material functions of her job. Defendant based its denial of Plaintiff's LTD benefits on the absence of evidence supporting total disability, rather than on a lack of objective medical evidence supporting her diagnosis of fibromyalgia.  Because mere professional disagreement alone does not constitute an arbitrary refusal, and because the Eastern District of Pennsylvania allows a plan administrator to require objective evidence that a condition is disabling, Defendant's denial of Plaintiff's application for LTD benefits was not arbitrary and capricious.

### III.    Conclusion

For the reasons set forth hereinabove, Defendant's Motion for Summary Judgment will be granted and Plaintiff's Motion for Summary Judgment will be denied.

An appropriate Order follows.

BY THE COURT:


/s/  C. Darnell Jones, II      J.

14